## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT AND FULL IRREVOCABLE GENERAL RELEASE ("Agreement") is entered into by and between ROSA MARIA CERRATO ALVAREZ with a DOB: ▓▓▓▓ and last four digits of Tax Identification Number _____ on behalf of herself, her heirs, representatives and any others claiming through her, as party of the first part (collectively referred to as "EMPLOYEE") and TORCHAV, INC. on behalf of itself and its directors, officers, shareholders, employees, representatives, attorneys, together with their predecessors, successors and assigns, in both their individual or corporate capacities as well as their respective family members, heirs, representatives and assigns and any other businesses in which any of them or their families have a management or ownership interest as parties of the second part (collectively referred to as "COMPANY").

### RECITALS

WHEREAS, EMPLOYEE is a plaintiff in an action claiming unpaid overtime wages styled Cerrato v. Torchav, Inc., et al., USDC Case No. 17-23617-cv-CMA ("the Lawsuit"); and

WHEREAS, COMPANY denies that it is liable to EMPLOYEE for the claims she makes in the Lawsuit, as reflected in her Statement of Claim; but

WHEREAS, the parties desire to avoid the distraction and expense of further litigation;

NOW, THEREFORE, the parties do mutually agree:

1. The above recitations are true and correct and are incorporated into this Agreement.

2. This Agreement shall affect the release of all claims which were, or could have been, asserted by, between and among EMPLOYEE and COMPANY in the Lawsuit, including any claims against individually named defendants (and those who could have been named as individual defendants) as well as all claims that are mutually released by the Parties in this Agreement.

3. In exchange for the promises made by the COMPANY in this Agreement, EMPLOYEE agrees to:

a. voluntarily and irrevocably generally release, satisfy and forever discharge COMPANY (and all of the persons or entities included in the collective definition of "COMPANY") above and any individually named defendants (and those who could have been individually named) from any and all duties, claims, rights, complaints, charges, damage, costs, expenses, attorney's fees, debts, demands, actions, obligations, liabilities, and cause of action, of any and every kind, nature, and character whatsoever, whether known or unknown, whether cognizable in law, in equity, or before administrative bodies, whether arising out of contract, tort, statute, settlement, equity or otherwise, whether foreseen or unforeseen, whether past, present or future, whether fixed, liquidated, or contingent, which he ever had, now has, or may in the future claim to have had against COMPANY based on any act or omission concerning any matter, cause, or thing from the beginning of the world through the date of her execution of this Agreement. EMPLOYEE's released and discharged claims include, but are not limited to, claims and



demands and actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., as amended; the Americans with Disabilities Act, 42 U.S.C. 12101 et seq.; the Equal Pay Act; the Family and Medical Leave Act, 29 U.S.C. 2601 et seq.; the Employee Retirement Income Security Act, as amended, 29 U.S.C. 1001 et seq.; the Fair Credit Reporting Act, 15 U.S.C. '1681, et. seq.; the National Labor Relations Act, 29 U.S.C. §151 et seq.; the Genetic Information Non-Discrimination Act, 29 U.S.C. 1182, et seq; the Florida Civil Rights Act, as amended, and any other provision in Chapter 760, Fla.Stat.; the Florida Whistleblower Act Section 448.101, et seq.; Chapter 440 relating to on-the-job injuries and worker's compensation claims; Section 440.205 dealing with retaliation under the Florida Worker's Compensation Act; all causes of action that can be asserted pursuant to Chapters 447 and 448, Florida Statutes, as amended, including Florida minimum wage or overtime claims; Article X, Section 24 of the Florida Constitution or under any other federal, state or local statute or Act, ordinance, regulation, custom, rule or policy relating to or dealing with employment discrimination; claims for unpaid back wages or compensation; claims for breach of an contract, implied contract, or *quantum meruit*, or any cause of action or claim for tort damages, negligence or personal injury as a result of his association with COMPANY; and claims under any instruments, agreements, or documents entered into by, between, or among the parties (all of the foregoing are hereinafter referred to collectively as the "Released Claims") with the exception of the obligations and benefits provided by COMPANY in this Agreement.

EMPLOYEE acknowledges that with respect to the Released Claims, she is waiving not only her right to recover money or other relief in any action that she might

Page 7 of 19

institute, but also waiving her right to recover money or other relief in any action that might be brought on her behalf by any other person or entity including, but not limited to, the State of Florida, the United States Equal Employment Opportunity Commission ("EEOC"), the U.S. Department of Labor ("DOL"), the National Labor Relations Board or any other (U.S. or foreign) federal, state, or local agency or department. This unconditional general release shall apply regardless of whether or not such released claims are exclusively within the jurisdiction of a court, tribunal or administrative body other than the Court in which this litigation was filed.

EMPLOYEE also represents and agrees that with the payment of the Settlement Sum (as defined below) she will have compromised all claims for outstanding compensation, bonuses, commissions, or benefits (including worker's compensation benefits) against COMPANY and the individually named defendants (and those who could have been named as defendants) although she suffered no other damages or injuries prior to her separation from employment with COMPANY;

    b.    Jointly move for a fairness review pursuant to <u>Lynn's Foods</u> and voluntarily dismiss the Lawsuit with prejudice;

    c.    Not apply for, or seek employment with, or to do business with or on behalf of COMPANY or any associated business. COMPANY and any associated business shall have no obligation to process an application for employment from EMPLOYEE or to accept any offer for services and any such refusal or failure to do so shall be solely on account of this Agreement;

    d.    Indemnify, defend, and hold harmless COMPANY against any claims,

Page **8** of **19**



losses, damages, taxes, fines, penalties or expenses occasioned or incurred by COMPANY by payment of the Settlement Sum, in the amounts apportioned as back wages, liquidated damages, and attorney's fees and costs and against any claims, losses, damages, or expenses incurred in connection with a claim by a non-party against the Settlement Sum. EMPLOYEE agrees to be solely responsible for payment of her portion of any payroll taxes that are or might be determined to be due as a result of the back wage portion of the Settlement Sum (as defined below). EMPLOYEE also represents that she has not assigned any rights being waived or released under this Agreement and that she has not filed for bankruptcy at the time this Agreement is executed and entered into, and

    e.    She shall not enter COMPANY's current or future premises and business locations (if known) or those of any associated business for any reason whatsoever and also agrees that he will not personally or through another person directly or indirectly contact current or former employees who work for, or serve as independent contractors to COMPANY in connection with the claims he made in this Lawsuit, the negotiations that took place for this Agreement or the terms of this Agreement. This provision shall be considered a "No Trespass" warning that COMPANY can seek to enforce through the police action or through civil proceedings.

    f.    EMPLOYEE acknowledges that the money and other benefits provided to her or on her behalf pursuant to this Agreement constitute adequate and ample consideration for the promises she makes in this Agreement and for waiving and releasing all claims in paragraph 2(a) above ;



    g.    Represents and agrees that she has not filed any claims, complaints, charges, lawsuits or other proceedings against COMPANY with any governmental agency, arbitrator, or any court and will not do so in the future based on the claims being released in this Agreement; and

    h.    Return every financial record and document which was produced to her attorneys in discovery, including those received from COMPANY's accountants and she shall not disclose the content of those records or documents to any other person. Additionally, she shall jointly move the Court for an order preventing the court reporter from releasing her transcription notes, or sealing any transcript that has been ordered, of the deposition of Oscar Ruiz and ordering the return of all financial records and documents that were made exhibits to Ruiz' deposition.

5.    Along with her signed copy of this Agreement, EMPLOYEE shall provide Company with signed and complete forms W4 and W-9 or any other federal tax forms that may be required. EMPLOYEE's counsel shall also execute and deliver a W-9 along with EMPLOYEE's signed copy of this Agreement.

6.    In exchange for the promises made by EMPLOYEE, and conditioned upon the occurrence of the events specified in ¶ 3 above, COMPANY agrees to:

    a.    voluntarily and irrevocably generally release, satisfy and forever discharge EMPLOYEE from any and all duties, claims, rights, complaints, charges, damage, costs, expenses, attorney's fees, debts, demands, actions, obligations, liabilities, and cause of action, of any and every kind, nature, and character whatsoever, whether known or



unknown, whether cognizable in law, in equity, or before administrative bodies, whether arising out of contract, tort, statute, settlement, equity or otherwise, whether foreseen or unforeseen, whether past, present, or future, whether fixed, liquidated, or contingent, which it ever had, now has, or may in the future claim to have had against EMPLOYEE based on any act or omission concerning any matter, cause, or thing from the beginning of the world through the date of its execution of this Agreement with the exception of the obligations and benefits provided by EMPLOYEE in this Agreement.

This unconditional general release shall apply regardless of whether or not such released claims are exclusively within the jurisdiction of a court, tribunal or administrative body other than the Court in which this litigation was filed. COMPANY also represents and agrees that it has not filed any claims, complaints, charges, lawsuits or other proceedings against EMPLOYEE with any governmental agency, arbitrator, or any court and will not do so in the future based on the claims being released in this Agreement.;

    b.    Jointly move for a fairness review pursuant to <u>Lynn's Foods</u> ;

    c.    Pay EMPLOYEE and her counsel, the law firm of J.H. ZIDELL, P.A. the total sum of fifteen hundred dollars and No Cents ($1,500.00), less applicable wage deductions or withholdings, plus interest as stated below (referred to throughout this Agreement as the "Settlement Sum"), as consideration for entering into this Agreement and EMPLOYEE'S performance of the promises she makes herein. The Settlement Sum of $6,000.00 shall be apportioned as follows:



As to EMPLOYEE, she shall receive the sum of three hundred dollars and no cents ($500.00), which shall be attributable to $100.00 in back wages (less deductions) for which COMPANY shall issue a form W-2 or other tax document; an additional sum of $100.00 representing liquidated damages; and the sum of one hundred dollars and no cents ($100.00) as consideration for her full irrevocable general release in favor of COMPANY and her performance of the other promises she makes in this Agreement; All checks representing payment to EMPLOYEE shall be made payable in his name.

As to J.H. ZIDELL, P.A. the sum of one thousand two hundred dollars and no cents ($1,200.00) as EMPLOYEE's attorney's fees and costs. All checks representing payment to J.H. ZIDELL, P.A. shall be made payable in its name.

EMPLOYEE and J.H. ZIDELL, P.A. may agree between themselves any other division of the Settlement Sum. The Settlement Sum shall be paid in full within seven (7) business days from the date the Court approves this Agreement and an order for dismissal with prejudice has been entered.

Should COMPANY fail to make payment of the Settlement Sum within five (5) calendar days of the date the Court enters an order of dismissal or should any of the checks be returned for non-sufficient funds or any other reason, EMPLOYEE's counsel shall give written notice via e-mail to COMPANY's counsel, Leslie W. Langbein, Esq., at langbeinpa@bellsouth.net. In the event that COMPANY fails to cure said breach within four (4) business days of receiving the written notification via e-mail, a final default judgment shall be entered against COMPANY for the Settlement Funds, less payment received. In the event of a breach, Plaintiff shall be entitled to an award of an additional

Page 12 of 19



$750.00 in attorneys' fees and costs in connection with filing its Motion for Final Default Judgment; and

    d.    Provide a neutral reference about EMPLOYEE's employment should COMPANY receive a request for an employment reference by a prospective employer. The only information that will be released is EMPLOYEE'S dates of employment and her last position held.



7.   This Agreement, the payment of the Settlement Sum and the promises made by COMPANY pursuant to this Agreement do not constitute admissions by COMPANY that it (or any of the persons or entities included in the collective definition of "COMPANY" above) is liable in any respect to EMPLOYEE for wrongful, unlawful or tortious conduct, it being understood that the sole premise for this Agreement is to avoid further distraction and litigation expenses associated with the Lawsuit.

8. a.

(1)   The Parties agree that this Agreement shall be tendered to the Court for its review and approval. The Parties and their attorneys agree that if this Agreement must be filed on the docket for approval, they shall not thereafter disclose the existence and terms of this Agreement (or refer individuals to the docket entry) and the content of the discussions pertaining to negotiations for this Agreement, (all considered to be "Confidential Information") except as may otherwise be required by the Court or to anyone other than each EMPLOYEE's spouse (if any), corporate personnel on a need to know basis; U.S. government agencies (such as the Internal Revenue Service), the Florida Department of Economic Opportunity or the Parties' accountants, tax preparers or auditors.

(2) Should EMPLOYEE disclose Confidential Information to any other person who is not authorized by paragraph 8(a)(1) above, COMPANY shall be released from its obligations under paragraphs 6(a) and (c).

(3)   The Parties further agree that, if a third party asks about the claims or demands made pursuant or related to the Lawsuit, a Party shall state no more than "the matter was resolved." This paragraph shall also include the obligation to refrain from



suggesting to anyone else that they act indirectly to make statements or take acts prohibited by or take acts prohibited by Paragraph 8 and its subsections.

     b.    The Parties shall refrain from engaging in disparaging conduct and also from making negative or derogatory statements concerning or directed at or about each other, unless such statements are either required by law or made in connection with a legal, administrative or arbitral proceeding which requires truthful testimony.

     c.    Should a Party receive a subpoena or request for production that requires that Party to produce a copy of this Agreement or testify about the negotiations for, existence or terms of this Agreement or the settlement of the Lawsuit, that Party shall give the other Party at least ten (10) calendar days' notice before responding to the subpoena or production request except in situations where the subpoena or production request must be responded to in less than ten (10) days in which case that Party must give immediate notice to the other Party.

9.    The Parties were encourage consult an attorney before signing this Agreement and acknowledges that they retained and actually consulted with their respective counsel of record in considering whether to sign this Agreement, that they have had a reasonable amount of time within which to consider this Agreement and that it has been fully explained to them in English or in Spanish. The Parties acknowledge that they each are entering into this Agreement freely and voluntarily and with complete understanding of the rights they are waiving in this Agreement, including the irrevocable nature of the waivers and releases given

10.    COMPANY represents that the person who signs this Agreement has been given sufficient authority to enter into this Agreement and bind it to the obligations

provided herein.

11. Except as otherwise stipulated by the Parties or otherwise awarded by the Court and except as to fees and costs related to breach, each party agrees to be responsible for its own attorney's fees and costs and not to seek any attorney's fees from the other Party with regard to the prosecution and defense of the Lawsuit and the preparation of this Settlement Agreement. Each Party agrees to be responsible for any future costs that may be assessed or incurred against it, including any costs imposed by the Court, except as to fees and costs related to breach.

12. This Agreement constitutes the complete understanding by, between and among EMPLOYEE and COMPANY and supersedes any previous agreement or arrangement regarding employment by and among them, with the exception of any pre-existing Non-Solicitation/Non-Disclosure/Non-Competition agreements. No other promise or agreements shall be binding unless signed by the Parties to this Agreement and no changes can be made to this Agreement unless in writing and signed by the affected Parties.

13. This Agreement may be used as evidence only in a subsequent proceeding in which one of the Parties alleges a breach of this Agreement. EMPLOYEE agrees that her counsel J.H. ZIDELL, P.A. or any of its attorneys may not use this Agreement as evidence to establish willfulness or lack of good faith or for any other evidentiary purpose in this or any future lawsuit against COMPANY.

14. The laws, rules and regulations of the State of Florida and the United States of America shall govern the interpretation and enforcement of this Agreement. In the event of a dispute concerning this Agreement, venue shall be set in Miami-Dade County,

Florida in any court of competent jurisdiction. The Court shall retain jurisdiction to enforce or interpret this Agreement.

15. This Agreement shall be binding upon the parties and inure to the benefit or detriment of their respective heirs, executors, administrators, assigns, successors, beneficiaries, and agents.

16. In the event that one or more terms or provisions of this Agreement are found to be invalid or unenforceable for any reason or to any extent, each remaining terms and provisions shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law and the Court shall have the authority to reform the Agreement as necessary to make the remaining provisions valid.

17. Should a Party breach of any material provisions of this Agreement (except as otherwise provided in Paragraph 6 above as to notification of a breach related to payment of the Settlement Sum), the non-breaching Party must give the breaching Party written notice of the exact nature of the alleged breach(s) and a period of seven (7) calendar days to cure the breach(s) prior to bringing any action to enforce or interpret this Agreement. The prevailing Party in any such action shall be entitled to an award of the reasonable attorney's fees and costs.

18. The Parties acknowledge and assume the risk that facts, additional and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

19. Any notices required to be made under this Agreement shall be made in



writing and delivered by U.S. Certified mail, by personal delivery, via email to the email address designated by the attorneys for the parties or by facsimile with confirmed receipt to the addresses below:

| | |
|---|---|
| If to EMPLOYEE | J.H. ZIDELL, P.A.<br>300 71ST Street. Suite 605<br>Miami Beach, Florida 33141 |
| If to COMPANY | Langbein & Langbein, P.A.<br>8181 NW 154th Street, Suite 105<br>Miami Lakes, FL  33016 |

or such other address as the parties may designate in writing from time to time.

20. No Party shall be responsible for any delay in any performance called for under this Agreement except for delay which is the result of, or caused by, acts of God, nature, war, national emergency or governmental regulations or control.

21. This Agreement may be executed in counterparts, all of which together shall form the Agreement and may be used and considered as a full original.  Facsimile signatures shall be deemed to be original signatures. .A copy of this Agreement may be used to enforce its terms if an original cannot be located.

223. The Parties agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Agreement and to effectuate the intent of the Parties hereto.

INTENDING to be legally bound, the parties sign this Agreement on the date indicated next to their signatures on the following page.

[REMAINDER OF PAGE BLANK]



By signing this Agreement, EMPLOYEE certifies that this Agreement has been accurately translated for him by an attorney and/or staff member of J.H. ZIDELL, P.A. and by signing this Agreement he acknowledges that he fully understands the terms of this Agreement.

**TRADUCCIÓN:** Al firmar este Acuerdo, el Demandante certifica que este Acuerdo ha sido traducido apropiadamente para él por un abogado y / o miembro del personal del bufete de abogados del EMPLEADO, y al firmar este Acuerdo reconoce que entiende completamente los términos de este Acuerdo.

ROSA MARIA CERRATO ALVAREZ
Print Name: _Rosa Maria Cerrato_
Date: _DEC 21, 2017_

COUNTY OF MIAMI-DADE
STATE OF FLORIDA

Sworn to and subscribed before me this _21_ day of _DEC_, 2017 by ROSA MARIA CERRATO ALVAREZ who produced _PASSPORT Honduran_ identification _4 FEB 2018_

NOTARY PUBLIC AT LARGE

JAMIE H. ZIDELL
MY COMMISSION # FF 939210
EXPIRES: February 15, 2020
Bonded Thru Notary Public Underwriters

TORCHAV, INC.

By _____
    Its

Print: _____

Date: _____